UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KRISTIN ANN PAHL,

                            Plaintiff,

      v.                                              **DECISION AND ORDER**
                                                                  16-CV-538S
NANCY A. BERRYHILL, *Acting
Commissioner of Social Security*,

                            Defendant.

      1.        Plaintiff Kristin Ann Pahl challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since January 14, 2011, due to residuals of lumbar and bilateral wrist factures and post-lumbar and bilateral wrist surgeries. Plaintiff contends that her impairments render her unable to work, and thus, she is entitled to disability benefits under the Act.

      2.        Plaintiff filed an application for disability benefits and supplemental security income on March 30, 2012, which was denied on January 30, 2013. Plaintiff thereafter requested a hearing before an ALJ. On April 7, 2014, ALJ Stanley A. Moskal, Jr. conducted a hearing at which Plaintiff appeared and testified. Plaintiff was represented by counsel. An impartial vocational expert, Jay Steinbrenner, also appeared and testified. At the time of the hearing, Plaintiff was 33 years old, with one year of college education and past relevant work experience as a restaurant manager, a cook, and a dining room attendant. Dkt. No. 8, p. 164. The ALJ considered the case *de novo*, and on September 25, 2014, issued a written decision denying Plaintiff's application for benefits. The

1

Appeals Council denied Plaintiff's request for review on May 4, 2016. Plaintiff filed the current action on June 30, 2016, challenging the Commissioner's final decision.[1]

3. On January 18, 2017, Plaintiff filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Docket Nos. 15. On February 28, 2017, the Commissioner filed her own Motion for Judgment on the Pleadings. Docket No. 18. Plaintiff filed a reply on June 15, 2017 (Docket No. 19), at which time this Court took the matter under advisement without oral argument. For the following reasons, Plaintiff's motion is denied, and Defendant's motion is granted.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. *See Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must

---

[1] The ALJ's September 25, 2014 decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.

also include that which detracts from its weight." *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a sequential five-step process to determine whether an individual is disabled under the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in *Bowen v. Yuckert*, and it remains the proper approach for analyzing whether a claimant is disabled. *Id.*, 482 U.S. 137, 140-42 (1987).

7. The five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to

3

> perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. *See Bowen*, 482 U.S. at 146 n.5; *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); *Heckler v. Campbell*, 461 U.S. 458, 460 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since January 14, 2011, the alleged onset date (Dkt. No. 8, p. 15); (2) Plaintiff's residuals of lumbar and bilateral wrist fractures and post-lumbar and bilateral wrist surgeries constitute severe impairments within the meaning of the Act (Dkt. No. 8, p. 15); (3) through the date last insured, December 31, 2012, Plaintiff did not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Dkt. No. 8, p. 15); (4) Plaintiff retained the residual functional capacity to perform sedentary work and did not have any manipulative, communicative, visual, or environmental limitations (Dkt. No. 8, p. 16); and (5) Plaintiff could perform jobs that exist in significant numbers in the national economy (Dkt. No. 8,

4

p. 20). Considering Plaintiff's status as a younger individual with more than a high school education, unable to perform her past relevant work, and a residual functional capacity to perform sedentary work with some limitations, the ALJ determined that Plaintiff was not under a disability as defined by the Act at any time from January 14, 2011, the alleged onset date, through December 31, 2012, the last date insured. Dkt. No. 8, pp. 20-22.

10. Plaintiff contends that the ALJ failed to properly credit her "well supported subjective complaints, resulting in a determination not supported by substantial evidence." Dkt. No. 15-1, p. 8. In particular, Plaintiff faults the ALJ for failing to consider that her condition did not improve despite therapy and medication; asserting that there was "no objective evidence" that Plaintiff was taking Cymbalta, Voltaren, Naprosyn and Advil to treat her pain; and failing to develop the record *sua sponte* to include those of Dr. Kumar whom Plaintiff testified treated her twice a year. Dkt. No. 15-1, p. 11. None of these alleged deficiencies amount to reversible error or so undermine the ALJ's credibility determination that remand is necessary.

11. As a general matter, credibility determinations are reserved to the Commissioner, not the reviewing court. *Aponte v. Sec'y of Health & Human Svcs.*, 728 F.2d 588, 591 (2d Cir. 1984) (holding that it is the job of the Commissioner and not the reviewing court to make determinations on the credibility of witnesses); *Carrol v. Sec'y of Health & Human Svcs.*, 705 F.2d 638, 642 (2d Cir. 1982) (holding the same). The ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged. *See Paries v. Colvin*, No. 5:11–CV–0478

(LEK/ATB), 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell*, 177 F.3d at 135).

The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about [her] symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005); *see* 20 C.F.R. §§ 404.1529, 416.929.[2] In evaluating an individual's symptoms,

> [A]djudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, . . . adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities . . ."

SSR 16-3p at *10.

---

[2] The Social Security Administration updated its guidance on evaluating symptoms in disability claims on March 16, 2016. *See* SSR 16-3p, 2016 WL 1119029 (effective March 16, 2016). SSR 16-3p eliminated the term "credibility" from the Administration's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character" and to "more closely follow our regulatory language regarding symptom evaluation." *Id.* at *1. Under the ruling, the Commissioner considers "all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." *Id.* at *1-2. In practice, SSR16-3p is substantially consistent with its predecessor, the now rescinded SSR 96-7p, as both set forth nearly identical processes to be followed and factors to be considered in determining the intensity and persistence of a claimant's symptoms. *Compare* SSR 16-3p *with* SSR 96-7p.

12. "At the first step in the credibility analysis, 'plaintiff's allegations need not be substantiated by medical evidence, but simply consistent with it. The entire purpose of section [ ] 404.1529 . . . is to provide a means for claimants to offer proof that is not wholly demonstrable by medical evidence." *Hogan v. Astrue*, 491 F. Supp. 2d 347, 353 (W.D.N.Y. 2007) (emphasis in original) (internal citations omitted); *see also* 20 C.F.R. § 404.1529(c) (reasoning that "symptoms, such as pain, are subjective and difficult to quantify," therefore, "any symptom-related functional limitations and restrictions . . . , which can be reasonably accepted as consistent with the objective medical evidence and other evidence, will be taken into account"). "Only allegations beyond what is substantiated by medical evidence are subjected to a credibility analysis. To require plaintiff to fully substantiate [her] symptoms would be both an abrogation of the regulations and against their stated purpose." *Hogan*, 491 F. Supp. 2d at 353 (citing *Castillo v. Apfel*, No. 98 Civ. 0792, 1999 WL 147748, at *7 (S.D.N.Y. Mar. 18, 1999)).

13. If the ALJ determines that the claimant is impaired, he must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about her symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility. *See Genier v. Astrue*, 606 F.3d 46, 49 (E.D.N.Y. 2010); *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002), and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the

witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

14. If a claimant's contentions are not supported by objective medical evidence, the ALJ must consider the following factors to make a determination regarding the plaintiff's credibility: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii); SSR 16-3p, at *7; *Meadors v. Astrue*, 370 Fed. App'x 179, 184 n.1 (2d Cir. 2010); *see also Murphy v. Barnhart*, No. 00 Civ. 9621 (JSR)(FM), 2003 WL 470572, at *10-11 (S.D.N.Y. Jan. 21, 2003) (citing 20 C.F.R. § 404.1529(c)). "An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96–9435 (JSR), 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)) (citations omitted).

15. ALJ Moskal methodically went through the necessary steps to evaluate Plaintiff's credibility. At the first step, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Dkt. No. 8, p. 16. At the second step, however, the ALJ found that "the claimant's statements

8

concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible, for the reasons explained in this decision." Dkt. No. 8, p. 16.

16. Specifically, the ALJ acknowledged that Plaintiff suffered "trauma" to her back and wrists when she fell off a forklift in 2007, suffering a L1 burst fracture with 50% canal compromise, a left open distal radius fracture, and a right distal radius fracture. Dkt. No. 8, pp. 16-17. The ALJ further noted that Plaintiff underwent "open reduction and internal fixation of bilateral wrist fractures and laminectomies with posterior fusion from T11 through L3." Dkt. No. 8, p. 17. Plaintiff's injuries and her resulting surgeries could reasonably be expected to cause some of the pain symptoms Plaintiff testified to at the hearing before the ALJ.

17. At the same time, the ALJ stated that Plaintiff's medical records supported the gradual improvement of her impairments. For example, the ALJ noted: Plaintiff had no surgical complications; her post-operative reports indicated that she was "doing well and ambulating independently;" and Plaintiff's treating neurosurgeon, Dr. Jason Huang, opined that Plaintiff "would continue to improve with time." Dkt. No. 17, p. 268. Citing to the neurosurgeon's treatment records (Dkt. No. 8, pp. 227-251), the ALJ acknowledged that "subsequent tests and examinations proved Dr. Huang right." Dkt. No. 8, p. 17.

18. Having reviewed Dr. Huang's records, this Court finds that the ALJ properly assessed the neurosurgeon's records as supporting a positive prognosis for Plaintiff. For example, Dr. Huang noted that on August 9, 2007, approximately three months after Plaintiff's back surgery, she was "ambulating independently," "only complained of minimal discomfort," and "denied leg weakness or gate instability." Dkt. No. 8, p. 237. On October 11, 2007, Dr. Huang reported that plaintiff was doing "extremely well since she was last

seen" with the exception of some hip discomfort. Dkt. No. 8, p. 239. Approximately one year following her surgery, Dr. Huang opined that plaintiff had "made an excellent recovery from her surgery," having only "minimal symptoms" including "very mild right knee area pain" and "unrelated left hip pain" that "has not been disabling." Dkt. No. 8, p. 240. At that time, plaintiff once again denied any significant leg pain or gait instability. Dkt. No. 8, p. 240. On March 17, 2009, close to two years after Plaintiff's surgery, Dr. Huang noted that: upon exam, Plaintiff was "in no acute distress," despite her reports of pain with walking; Plaintiff had stopped taking gabapentin, a medication used to treat nerve pain; and Plaintiff denied any gait instability. Dkt. No. 8, p. 243. Dr. Huang reported on September 4, 2009, that CT scans of Plaintiff's spine revealed good alignment and no evidence of fusion failure or central canal stenosis but did show a disc bulge with some compression. Dkt. No. 8, p. 244. CT scans taken approximately 6 months later, reviewed by Dr. Huang on March 23, 2010, showed no evidence of fusion hardware failure, except some deviation of two pedicle screws. Dkt. No. 8, p. 246-47. Dr. Huang referred plaintiff for physical therapy for her residual pain, opting to treat her symptoms "conservatively." Dkt. No. 8, p. 247. On March 12, 2013, despite plaintiff's reported back pain, Dr. Huang noted that plaintiff was neurologically stable, that her pain was controlled with oral medications, and that she was ambulatory without any gait instability. Dkt. 8, p. 250. Dr. Huang referred plaintiff to a pain specialist and recommended that she "increase walking." Dkt. No. 9, p. 250. That Dr. Huang's prescribed treatments of medication, physical therapy, and increased walking — as opposed to surgery or injections — were conservative supports the ALJ's determination that plaintiff's pain was not as debilitating as she testified. *See Penfield v. Colvin*, 563 Fed. App'x 839, 840 (2d Cir. 2014) (holding

that the ALJ properly gave claimant's testimony that she was in constant pain only "partial credibility" in light of the fact that her treating physician consistently prescribed "conservative treatment[s]" of "walking[,] home exercise program[s]," and "gentle stretching").

19. In evaluating plaintiff's subjective complaints of pain, the ALJ also noted that plaintiff's visits to Dr. Huang were progressively further apart and that there was no indication that she was seeking treatment elsewhere. Dkt. No. 8, p. 17. The ALJ ultimately gave partial weight to the opinion of Dr. Hongbiao Liu, the consultative orthopedist, who evaluated plaintiff on January 25, 2013, and concluded that she had only a mild limitation for prolonged walking, bending, kneeling, and overhead reaching. Dkt. No. 8, p. 18. ALJ Moskal actually found that plaintiff's limitations were greater than Dr. Liu had concluded and that given plaintiff's significant history of lumbar injuries, she had more than just a mild limitation in walking, standing, bending, and kneeling. Dkt. No. 8, p. 18. In addition to Dr. Huang's progressive treatment notes, the ALJ relied on the following record evidence in finding that plaintiff had the residual functional capacity to perform sedentary work and that her impairments were not worsening (Dkt. No. 8, p. 18): the conclusions of the pain management specialist, Dr. Armando Villareal, that plaintiff had "no significant pain behavior," and no features of neuropathic pain, and that her pain could be controlled with Cymbalta (Dkt. No. 8, p. 255); plaintiff's report that as of November 20, 2012, she could prepare simple meals, do laundry, clean and wash the dishes with some assistance from her husband, feed her chickens and collect eggs, attend church weekly and bible study once a month, and drive once or twice a week for 15 minutes (Dkt. No. 8, pp. 175-85); and plaintiff's testimony at the April 7, 2014 hearing

that she had driven in a car as long as an hour and 15 minutes to a doctor's appointment, could sometimes squat and bend her knees, and could feed and dress herself and do household chores with some assistance (Dkt. No. 8, pp. 38, 42, 45-46, 51, 53). Consequently, this Court finds no reversible error in the ALJ's credibility determination, which fell well within his discretion and was supported by substantial evidence in the record.

20. Plaintiff next argues that the ALJ erred in concluding that the record did not show "any worsening of claimant's impairments." Dkt. No. 15-1, p. 11. As an initial matter, this Court agrees with Defendant that "it is not the ALJ's burden to show that plaintiff's impairments improved, instead it is Plaintiff's burden to show that her impairments would preclude any substantial activity over a period of at least 12 months." Dkt. No. 18-1, p. 16. Moreover, the evidence Plaintiff cites to as proof that her pain had not improved despite therapy and medication falls after her date last insured, December 31, 2012. A claimant's "reliance on evidence demonstrating a worsening of her condition after [the] date [last insured] is of little value." *Vilardi v. Astrue*, 447 Fed. App'x 271, 272 (2d Cir. 2002). Nonetheless, the ALJ actually considered both Dr. Huang's and Dr. Villarrea's treatment notes from 2013 and found that plaintiff's physical exams during this time frame were "essentially normal" and "unremarkable," and her subjective reports of pain were exaggerated given her daily activities. Dkt. No. 8, pp. 18-19. Accordingly, this alleged error does not form a basis to overturn the ALJ's decision.

21. With regard to the ALJ's conclusion that there was no objective evidence that Plaintiff was taking certain medications and his purported failure to develop the record *sua sponte*, I find that neither alleged error compels reversal of his decision. It is in fact

the case that other than plaintiff's own testimony and reports to her doctors, there was no evidence that she was taking any particular medication. So, it was not erroneous for the ALJ to acknowledge this fact. Regarding Plaintiff's records, it is undisputed that the ALJ agreed, at Plaintiff's counsel's request, to hold the record open for 30 days so she could submit additional records from "Strong Clinic," where Plaintiff treated with Dr. Kumar. Dkt. No. 8, p. 36, 67. More than five months elapsed between the hearing and the decision, during which time Plaintiff's counsel failed to submit any additional records or to move for an extension of time to do so. Under such circumstances, it cannot be said that the ALJ failed to discharge his duty to develop the record. *Dutcher v. Astrue*, No. 09-CV-1161 LEK/VEB, 2011 WL 1097860, at *6 (N.D.N.Y. Mar. 7, 2011), *report and recommendation adopted*, No. 3:09-CV-1161 LEK/VEB, 2011 WL 1042773 (N.D.N.Y. Mar. 22, 2011) (citing *Jordan v. Commissioner of Social Security*, 142 Fed. App'x 542, 543, 2005 WL 2176008, at *1 (2d Cir. Sep't 8, 2005)).

22. Having reviewed the ALJ's decision and the administrative record in its entirely, this Court finds no error in the ALJ's determination that Plaintiff can perform sedentary work. The ALJ's decision adequately assessed Plaintiff's credibility in light of the objective medical evidence and his determination regarding Plaintiff's residual functional capacity is supported by substantial evidence. Defendant's Motion for Judgment on the Pleadings is therefore granted, and Plaintiff's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 18) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 15) is DENIED.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

DATED:  Buffalo, New York
        September 11, 2018

                                        _s/ H. Kenneth Schroeder, Jr._
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**